**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| YASH HAVALIMANE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:25-CV-236 |
| | § | |
| UP-BUSINESS.TOP, RADHIKA GUPTA, | § | |
| and JOHN DOES 1-20, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is the case entitled Yash Havalimane ("Havalimane") v. Up-Business.Top ("UBT"), Radhika Gupta ("Gupta"), and John Does 1-20 (collectively "Defendants"). Havalimane seeks relief from a purported "pig-butchering" scheme, wherein Defendants allegedly stole approximately 3.1 million dollars from him. For the reasons set forth below, the court orders that this case be transferred *sua sponte* from the Beaumont Division of the Eastern District of Texas to the Houston Division of the Southern District of Texas under 28 U.S.C. § 1404(a).

I.    Background

In November 2024, Defendant Gupta allegedly contacted Havalimane via Facebook, marking the inception of Gupta and Havalimane's relationship. Gupta and Havalimane began messaging one another regularly and, eventually, Gupta mentioned the success she had experienced investing and trading cryptocurrency. According to Havalimane, Gupta told him that she knew how to make a profit by trading on a platform called Up-Business.Top. Gupta offered

to teach Havalimane how to do the same.  Havalimane accepted Gupta's offer and created an account with UBT.

Once Havalimane created his UBT account, Gupta purportedly trained Havalimane how to trade cryptocurrecy on UBT's platform.  After several months of training, Havalimane began depositing funds into his UBT account, which were subsequently reflected in his transaction history on the platform.  Over time, Havalimane deposited $3,100,000.00 to his UBT account. Havalimane maintains that nothing seemed amiss, as his balance on UBT's platform seemingly grew rapidly from the alleged trading of his deposited funds.  Before discovering the fraudulent nature of the platform, Havalimane's UBT account displayed a balance of over $8,000,000.00 in assets.

Havalimane discovered UBT and Gupta's purported fraud when he attempted to withdraw funds from his account.  After unsuccessfully attempting to withdraw funds, Havalimane contacted a UBT business representative.  The representative told him that a withdrawal could not be processed and provided excuses commonly used by fraudulent cryptocurrency enterprises. Havalimane avers that the funds he transferred to UBT were never deposited or invested, but rather, they were stolen.

On May 19, 2025, Havalimane filed his Complaint (#1) in the Eastern District of Texas, Beaumont Division.  Defendants' current residences and locations are unknown.  Havalimane, however, resides in Katy, Texas, which is located in the Southern District of Texas, Houston Division.  Additionally, a substantial portion of the events giving rise to the present litigation arose in the Southern District of Texas.  The Eastern District of Texas, however, seemingly has no ties

2

to the present litigation.  Therefore, the court will assess the propriety of transferring the present action to the Southern District of Texas, Houston Division.

II.    <u>Analysis</u>

A court may transfer venue *sua sponte* under 28 U.S.C. § 1404(a).  *Pabtex, Inc. v. M/V ARUNA CENGIZ*, No. 3:24-cv-00084, 2025 WL 517740, at *3 (S.D. Tex. Feb. 18, 2025); *Zuazua v. C.R. England, Inc.*, No. SA-21-CA-0544-FB, 2021 WL 8442046, at *1 (W.D. Tex. Aug. 20, 2021).  Section 1404(a) gives the court discretion to determine whether transfer is appropriate according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014).  Consequently, the district court has broad discretion in deciding whether to order a transfer. *Epley v. Lopez*, No. 23-10374, 2025 WL 1156520, at *4 (5th Cir. Apr. 21, 2025); *see Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).  If the requirements of §1404(a) are satisfied, a district court may effectuate the transfer regardless of whether venue is proper in the present forum. *Pabtex, Inc.*, 2025 WL 517740, at *3; *Zuazua*, 2021 WL 8442046, at *1.

A.    <u>Alternative Venue</u>

Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Hence, § 1404(a) first requires the court to identify a district or division in which this action could have been brought.  Pursuant to 28 U.S.C. 1391(b)(2), venue would be proper in the Southern District of Texas, Houston Division.

Section 1391(b)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In the present case, all of the communications, interactions, and deposits took place online. Defendants' locations during this time period are unknown. Havalimane, however, resided in Katy, Texas, when he was allegedly exploited by Defendants. As a result, a substantial part of the events giving rise to Havalimane's claim arose in Katy, Texas, as that is where Havalimane engaged with Defendants and initiated the deposits that are the subject of the present litigation. Additionally, when Defendants directed their communications to Havalimane, they were directing their communications to Katy, Texas, where Havalimane accessed and responded to those messages. As noted above, Katy, Texas, is located in the Southern District of Texas, Houston Division. Therefore, venue is proper in the Houston Division of the Southern District of Texas because a substantial part of the events or omissions giving rise to Havalimane's claims occurred there.

B.    Convenience and Justice

In addition to identifying an alternative forum, § 1404(a) requires the proposed transfer to increase the "convenience of the parties and witnesses" and serve the "interest of justice." 28 U.S.C. § 1404(a). Specifically, the court must weigh certain public and private interest factors to determine whether the destination venue is "clearly more convenient than the venue chosen by the plaintiff." *In re Chamber of Com. of U.S. of Am.*, 105 F.4th 297, 303-04 (5th Cir. 2024); *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The private interest factors evaluate:

(1)    the relative ease of access to sources of proof;

(2)      the availability of compulsory process to secure the attendance of witnesses;

(3)      the cost of attendance for willing witnesses; and

(4)      all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th 502, 509 (5th Cir. 2024). The public interest factors consider:

(1)      the administrative difficulties flowing from court congestion;

(2)      the local interest in having localized interests decided at home;

(3)      the familiarity of the forum with the law that will govern the case; and

(4)      the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509. The United States Court of Appeals for the Fifth Circuit has recognized that no factor is of dispositive weight, and courts should avoid a "raw counting of factors." *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509.

1.     <u>Private Interest Factors</u>

The court must consider four private interest factors when determining whether transfer under § 1404(a) is permissible. *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509. First, the court must consider the relative ease of access to sources of proof. *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509. Here, transferring the present case to the Houston Division of the Southern District of Texas will increase the relative ease of access to sources of proof. Havalimane, along with the devices he

used to access Defendants' platform, are located in the Southern District.  Moreover, counsel for Havalimane maintains an office in Houston, Texas.  Therefore, the first factor weighs in favor of transferring the present case to the Southern District of Texas.

Second, courts evaluate the availability of compulsory process to secure the attendance of witnesses.  *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509.  Because of the nature of the case, it is unclear to what extent non-party witnesses will play a role in the present litigation.  Nevertheless, any non-party witnesses located in the only city known to bear a connection to the present litigation, Katy, Texas, are outside range of the Eastern District's subpoena power for deposition under Rule 45(c)(1)(a).  *In re Volkswagen of Am.*, 545 F.3d 304, 316 (5th Cir. 2008); FED. R. CIV. P. 45(c)(1)(a).  Furthermore, any trial subpoenas for witnesses located in Katy would likely be subject to a motion to quash under Federal Rule of Civil Procedure 45(c)(3) because Katy is located over 100 miles from Beaumont, Texas.  The Houston Division, however, would possess subpoena power for both depositions and trial.  FED. R. CIV. P. 45(c).  Therefore, the second factor weighs in favor of transfer.

Third, the court must consider the cost of attendance for willing witnesses.  *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509.  The Fifth Circuit has recognized a 100-mile threshold, which states that when the distance between an existing venue for trial of a matter and a proposed venue is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.  The distance between courts presiding in the Houston Division of the Southern District of Texas and the Beaumont Division of the Eastern District of Texas is approximately 88.5 miles.  Katy, Texas, however, is approximately 29 miles west of Houston and 112 miles from Beaumont.  Thus,

maintaining venue in the Beaumont Division would require willing witnesses located in Katy to travel 112 miles to attend trial, whereas the same witnesses would have to travel only 29 miles to attend trial in Houston.  Therefore, the court concludes that the third factor weighs in favor of transfer.

The fourth factor requires the court to examine any other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509.  As discussed above, the only judicial district bearing any connection to the facts of the present case is the Southern District of Texas, where Havalimane resides and his virtual interactions with Defendants took place.  Additionally, the devices Havalimane used to contact Defendants and to make deposits on UBT's platform are located there.  Consequently, the private interest factors heavily favor transferring the above-styled case to the Southern District of Texas, Houston Division.

2.     Public Interest Factors

Having concluded that the private interest factors strongly favor transfer, the court must also assess the public interest factors.  *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509.  The first factor pertains to  the administrative difficulties flowing from court congestion.  *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509.  Specifically, this factor considers whether there is "an appreciable difference in docket congestion between the two forums."  *Optimum Imaging Techs., L.L.C. v. Nikon Corp.*, No. 4:23-cv-923, 2025 WL 904388, at *7 (E.D. Tex. Mar. 25, 2025); *see In re Clark*, 94 F.4th at 509.

Here, an analysis of the first factor yields divergent results.  According to the December 31, 2024, Federal Court Management Statistics published by the Administrative Office of United States Courts, the Eastern District of Texas had 6,611 cases pending in 2024, while the Southern District had 15,088 pending cases.  As a result, the average number of pending cases per judge in the Southern District was approximately 794.1, whereas the average in the Eastern District was approximately 826.3 cases per judge.  During the same statistical period, however, there existed an average period of 32 months between the date of filing and the start of trial in the Southern District, as compared to 23 months in the Eastern District.  Therefore, the first factor is, at most, neutral given the conflicting statistics.

The second public interest bears on the interest in having localized disputes decided at home.  *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509.  The Fifth Circuit has noted that the second public interest factor does not focus merely on the parties' significant connections to each forum, but rather the significant connections between a particular venue and the events that gave rise to a suit.  *Def. Distrib. v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) (citing *In re Apple, Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020)).  Additionally, the Fifth Circuit has recognized that "[i]mportant considerations include the location of the injury, witnesses, and the Plaintiff's residence." *Id.*

Here, the Houston Division of the Southern District of Texas has a significantly stronger interest in having localized interests decided at home.  In contrast, the Beaumont Division of the Eastern District of Texas bears no connection to the present case.  Rather, it appears the case was filed here simply because counsel for Havalimane has identified this venue as a favorable forum, as evidenced by counsel having filed approximately nine other cases with similar facts in the

8

Beaumont Division. Notably, the vast majority of those cases also lack any meaningful connection to this district or division.

The present case, however, concerns a dispute that arose in the Houston Division of the Southern District of Texas, meaning that the Southern District has a localized interest in having the case decided at home. Havalimane, a resident of the Houston Division, was the alleged target of a multi-million dollar fraudulent scheme. Moreover, the facts giving rise to the present case took place, at least in part, there. Consequently, the Houston Division maintains a significant interest in resolving Havalimane's dispute. Moreover, the alleged injury occurred in the Southern District of Texas, as Havalimane resided in Katy when he was purportedly defrauded by Defendants. Because the Southern District of Texas has a significant interest in having localized interests decided at home, the second factor weighs heavily in favor of transferring the case to the Houston Division of the Southern District of Texas.

The third and fourth factors require the court to evaluate the familiarity of each forum with the governing law and whether transfer will avoid unnecessary conflicts of law or avoid the application of foreign law. *In re Chamber of Com. of U.S. of Am.,* 105 F.4th at 304; *In re Clarke*, 94 F.4th at 509. These factors, however, are neutral. Transferring the case from the Eastern District of Texas to the Southern District of Texas will not create any unnecessary conflicts of law, nor will it require either court to apply foreign law. Additionally, neither forum is better situated to apply the governing law as both courts are federal district courts located in the State of Texas. Therefore, the third and fourth factor neither weigh in favor nor against transferring the above-styled case.

On balance, the public and private interest factors favor transferring the present case to the Southern District of Texas, Houston Division. In contrast to the Houston Division, the Beaumont Division has no apparent connection to the facts of the present case. Additionally, requiring the court and the residents of the Eastern District of Texas to expend significant time and resources to resolve a case where there exists no relationship of consequence between the plaintiff's chosen forum and the dispute would be a disservice to the parties. Moreover, such an outcome would unfairly burden the residents of the Beaumont Division with resolving a dispute that has little to no relevance to the community. The Houston Division, however, presents a more convenient forum and has a significant stake in resolving the present dispute. Therefore, the court finds that it is in the interest of justice to transfer this case to the Southern District of Texas, Houston Division.

III.    Conclusion

For the foregoing reasons, the court concludes that the convenience of the parties and witnesses, along with the interest of justice, would best be served by transferring this case to the Southern District of Texas, Houston Division.

SIGNED at Beaumont, Texas, this 28th day of May, 2025.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE